Entered on Docket
March 17, 2017
EDWARD J. EMMONS, CLERK
U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA



The following constitutes
the order of the court. Signed March 16, 2017

*Charles Novack*
Charles Novack
U.S. Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re:<br>LAWRENCE KAYAN CHOY,<br>    Debtor. | Case No. 14-44180 CN<br>Chapter 7 |
| TRACY HOPE DAVIS, United States Trustee,<br>    Plaintiff,<br>vs.<br>LAWRENCE KAYAN CHOY,<br>    Defendant. | Adversary No. 15-4075<br>**MEMORANDUM AFTER TRIAL** |

On October 18 and 19, 2016, this court conducted a trial in this adversary proceeding. All appearances were made on the record. Plaintiff Tracy Hope Davis, the United States Trustee serving this court (the "U.S. Trustee"), seeks to deny defendant Lawrence Choy's Chapter 7 discharge on numerous grounds, including a) his failure to prepare accurate bankruptcy schedules and statement of financial affairs, including but not limited to his statements under oath regarding his income; b) Choy's various transfers to and from his Chapter 11 debtor-in-possession accounts for his own benefit, and failure to deposit all of his income (in particular, the income from coin operated washers and dryers located at two of his rental properties) into his general debtor-in-possession bank account; and c) Choy's failure to maintain appropriate business records regarding his rental properties and related security deposits. The following constitutes this court's findings of fact and conclusions of

law under F.R.B.P. 7052.

Lawrence Choy ("Choy") filed a Chapter 11 case on March 8, 2013 to stay 1) a trustee sale against one of his rental properties and 2) multiple pieces of litigation arising from illegal tenancies in his San Francisco rental properties. Choy holds a computer science degree from the University of California, Berkeley and is an experienced real estate investor. Choy's Chapter 11 was converted to a Chapter 7 case on November 10, 2014, and this adversary proceeding was filed on July 31, 2015. While Choy is married, his wife did not join him in this bankruptcy filing.

On March 1, 2013, Choy retained an experienced bankruptcy attorney, Scott Schwartz, to file his Chapter 11 case[1]. Given the short amount of time between his retention and the filing of the Chapter 11 case, Schwartz filed a "skeletal" bankruptcy petition. Choy filed his first set of bankruptcy schedules and his statement of financial affairs on March 22, 2013. These documents were seriously deficient. Choy failed to list all of his property interests on his Schedules A/B, misstated bank account numbers and account balances, omitted numerous creditors on Schedules E/F, did not list any employment income, and failed to complete most of his statement of financial affairs. While Choy substantially amended his schedules and statement of financial affairs by April 18, 2013, he continued to amend his bankruptcy schedules through May 2015. Between his petition date and May 2015, Choy amended his petition to list a prior bankruptcy filing, and repeatedly amended his schedules and statement of financial affairs to a) include additional creditors (such as the tenants who were suing him in San Francisco County Superior Court), b) add creditor addresses, c) list employment income, d) change valuations, or d) simply "fill in the blanks" left in prior iterations. The contrast between his original schedules and his last set of amended schedules (filed on May 8, 2015) is significant. For example, Choy's original Schedule F listed $67,708.00 in general, unsecured claims. His May 8, 2015 version listed $6,368,924.18 in general, unsecured claims.

---

[1] Schwartz substituted out of the case on September 4, 2014, and was replaced by C. Anthony Hughes, by order dated November 10, 2014. Hughes substituted out of the case on March 15, 2015. Since that time, J. Luke Hendrix of the Desmond, Nolan, Livaich & Cunningham law firm has represented Choy.

2

**MEMORANDUM AFTER TRIAL**

Schwartz's office regularly emailed Choy during March 2013 in an effort to obtain the information needed to complete Choy's bankruptcy schedules and statement of financial affairs. These emails and the spotty amendments that ensued indicate that Schwartz and Choy had communication difficulties. For example, after Schwartz filed the skeletal petition, Schwartz set deadlines for Choy to provide him with information that Choy could not meet. While Schwartz's deadlines were based on the filing requirements of the Federal Rules of Bankruptcy Procedure, Schwartz could have easily extended these deadlines with routine ex-parte applications. Schwartz never sought an extension of time, and his failure to do so compelled him to file incomplete schedules and statement of financial affairs. Moreover, when Schwartz filed Choy's original (but woefully incomplete) bankruptcy schedules and statement of financial affairs on March 22, 2013, they did not contain much of the information that Choy had sent to Schwartz on the evening of March 21st. Choy was not aware of this, since Schwartz only asked him to review and sign the signature pages to these documents.

Choy also bears responsibility for his flawed bankruptcy filings. Choy testified that he reviewed his amendments before signing them, and that he believed that the amendments were complete. Yet, given his business experience and education, he must have known these documents were incomplete. The U.S. Trustee asserts that Choy was particularly cavalier regarding the accuracy of the employment income he listed on Schedule I. In March 2013, Choy informed Schwartz that his retail cell phone business, FoneArt, closed in 2011 and that he was unemployed in 2012. In a March 21, 2013 email to Schwartz, Choy stated that he had started a job as a general sales manager for one of his father's companies, PK Pneuma Corporation, on March 28, 2013, and that his $8,000/gross month salary "could be adjusted higher if necessary." At some point during his Chapter 11 case PK Pneuma closed, and Choy began working for Hydrogen Power, another one of his father's companies. This company allegedly sold renewable energy equipment that cost millions of dollars. Throughout his Chapter 11, Choy's monthly operating reports routinely listed $6,500 in

3

monthly wages (which Choy asserted was his "net" income).[2] Choy never provided to the U.S. Trustee, his Chapter 7 trustee or his attorneys any proof of employment (i.e., an employment contract, a W-2 or 1099 tax form), and he conceded that he never sold any equipment on behalf of his father's companies. These inconsistencies led the U.S. Trustee to suspect that his father was gifting him some amount each month to allow him to "show income" for Chapter 11 purposes.

The U.S. Trustee's concerns regarding Choy's finances extended beyond his questionable wages. Two of Choy's properties had coin operated washers and dryers that were used by his tenants. Choy conceded that his wife collected these funds during his Chapter 11 and did not deposit them into his general debtor-in-possession account. Choy did not state how much income these machines generated during his Chapter 11 or how frequently his wife collected these funds. Choy also admitted that he spent approximately $19,000 in pre and post tenant security deposits on his personal expenses. Choy received and spent the bulk of these security deposits before he filed his Chapter 11. He did not state, however, exactly when he received and spent these funds.

The U.S. Trustee was also troubled by Choy's penchant for transferring funds between his various debtor-in-possession accounts. When he filed his Chapter 11, Choy owned rental properties at 2433 Santiago Street, 1663 10th Avenue, 1842 26th Avenue, and 2311 32nd Avenue (all in San Francisco), and 363 Visa Roma Way in San Jose. Choy understood that the rents generated by these properties were his secured creditors' "cash collateral" and that he, as a Chapter 11 debtor-in-possession, could not spend or transfer the cash collateral without their consent or a court order. He also understood that as a Chapter 11 debtor-in-possession he was required to establish separate bank accounts for each of these properties. Choy opened a general debtor-in-possession ("DIP") bank account into which he deposited his monthly "salary" and from which he paid his personal living expenses. He also established separate DIP accounts for each of his rental properties. Choy's bank records demonstrate, however, that Choy occasionally transferred funds between his DIP accounts. Some of these transfers were relatively innocent; others, however, had more disconcerting overtones.

---

[2] Choy's wife filed a Chapter 13 bankruptcy in December 2013 (more on this later). Her Schedule I stated that Hydrogen Power was not paying Choy any salary, and her Statement of Financial Affairs stated that Choy did not have any employment income during 2013.

4

**MEMORANDUM AFTER TRIAL**

Choy admitted that he would transfer funds from his general DIP account to a real property DIP account if the latter lacked the funds to make the monthly mortgage payment. Choy would then "repay" himself by transferring funds from that real property DIP account to his general DIP account. Choy made these transfers at various times during his Chapter 11 case. While there is no prohibition from transferring funds from a general DIP account to make a monthly, post-petition mortgage payment, Choy improperly used cash collateral to repay himself without the secured creditor's or this court's consent.

Choy's unauthorized use of cash collateral, however, extended beyond these occasional transfers between DIP accounts. By the spring of 2014, Choy's Chapter 11 bankruptcy prospects were grim. As stated above, several of Choy's former tenants had sued him in San Francisco County Superior Court over their illegal tenancies, and they responded to his Chapter 11 bankruptcy by filing non-dischargeability adversary proceedings against him. The tenants shared the same attorney who obtained stay relief orders to liquidate their fraud (and other tort) claims in San Francisco County Superior Court. While Choy's insurance coverage enabled him to settle several of these actions, Choy could not convince his insurance company (State Farm) to resolve the "Poe" Superior Court action. The damages sought in these tenant adversary proceedings amounted to hundreds of thousands of dollars, all of which were potentially non-dischargeable.[3] In addition, while Choy had filed a combined Chapter 11 plan/disclosure statement on July 31, 2014, his Chapter 11 plan confirmation prospects stalled soon thereafter.[4] Choy knew that he needed the tenants' cooperation to confirm a Chapter 11 plan, and that their cooperation was not forthcoming. Anthony Hughes testified to his numerous attempts to resolve the tenants' claims and negotiate an agreeable payment plan through a Chapter 11 plan. His efforts were unsuccessful, which ultimately compelled Choy to

---

[3] This court granted Poe relief from the automatic stay to liquidate his claim in Superior Court. The Poe trial was scheduled to commence on December 5, 2014.

[4] The court takes judicial notice that Schwartz filed a Chapter 11 combined document on July 31, 2014, and withdrew it on August 24, 2014, two weeks before he withdrew as counsel. While Hughes filed a combined document on October 9, 2014 and set the disclosure statement aspect for a November 20, 2014 hearing, this hearing was superceded by Choy's motion to convert to Chapter 7, which was heard and granted on November 6, 2014.

5

**MEMORANDUM AFTER TRIAL**

convert to Chapter 7.

Choy also wanted to avoid losing any of his rental properties, in particular the 2433 Santiago Street rental (the "Santiago Property"). The court takes judicial notice that U.S. Bank filed a stay relief motion on April 30, 2014 to foreclose on its senior deed of trust against the Santiago Property. Even though the Santiago Property was generating rent, U.S. Bank stated that Choy was eight months in post-petition default. The court granted U.S. Bank's stay relief motion by order dated May 20, 2014.

The Santiago Property DIP account swelled due to Choy's retention of the rents, and by September 30, 2014, its account balance was $21,636.00. Despite the relief from stay order, Choy wanted to retain the Santiago Property. He also wanted to resolve the Poe litigation, which not only had stymied his Chapter 11 plan prospects, but also would possibly leave him with a sizeable non-dischargeable debt if he converted to Chapter 7.

Choy addressed these seemingly unrelated problems by using the cash collateral in several DIP accounts to retain attorneys to extricate himself from these problems. These attorneys - none of whose employment was approved by this court - collectively negotiated with State Farm to obtain insurance coverage for Choy and arranged for Choy to transfer the Santiago Property to his wife, who then filed her own Chapter 13 case. Choy's bankruptcy attorney (now Hughes) knew of Choy's machinations, and he strategically filed a motion to abandon the Santiago Property, which was shortly thereafter followed by a motion to convert Choy's Chapter 11 to a Chapter 7.

The Transfers

In September 2014, Choy and his wife, Karen Huang, retained a family law attorney to prepare a postnuptial agreement that, among other things, transferred full fee title to the Santiago Property to Huang[5]. Choy and Huang signed the post-nuptial agreement on September 20, 2014. To effectuate the transfer, Choy signed a quitclaim deed on November 10, 2010 and recorded it that same day. Huang filed a Chapter 13 bankruptcy on November 7, 2014, and claimed a full fee

---

[5] Choy held title to the Santiago Property as a "married man as sole ownership" when he filed his Chapter 11.

6

**MEMORANDUM AFTER TRIAL**

interest in the Santiago Property on her bankruptcy Schedule A. Kayla Grant filed Huang's Chapter 13 bankruptcy, and Choy used cash collateral (from the 1663 10th Avenue DIP account) to pay her $2,000 retainer and the $310.00 filing fee. Choy issued a single check, dated October 23, 2014, to pay the $2310.00 to Grant. This check cleared on November 10, 2014.

Choy addressed the Poe litigation by retaining Robert Sheppard of the Sheppard, Uziel, Sussman & Rosen law firm to negotiate with State Farm. On October 20, 2014, Choy signed a retainer agreement with Sheppard which required a $25,592.50 retainer. On October 22, 2014, Choy transferred $21,200 from the Santiago Property DIP account to his general DIP account, and used these funds to pay the bulk of Sheppard's retainer.[6] Choy also transferred lesser sums that day to his general DIP account from several other cash collateral DIP accounts: $3,700 from the 336 Vista Roma Way DIP account, $1,770 from the 1663 10th Avenue DIP account, and $4,200 from the 1842 26th Avenue DIP account. Choy neither sought the consent of his secured creditors nor an order from this court for any of these transfers.

The Motions

On October 7, 2014, Hughes filed a terse motion to abandon the Santiago Property, and scheduled it for a November 6, 2014 hearing. Choy did not disclose to whom he wanted to abandon the Santiago Property, nor divulge that he and Huang had executed a post-nuptial agreement to transfer the Santiago Property to her. The motion also did not request the abandonment of cash collateral held in the Santiago Property DIP account. Instead, Choy simply stated in the motion that there was no equity in the Santiago Property and that it therefore had no value for his bankruptcy estate. No one opposed the abandonment motion, and this court granted the motion by an order signed on November 10, 2014 and entered on November 12, 2014.

On October 22, 2014, Hughes filed Choy's motion to convert. Choy based his motion on his inability to confirm a Chapter 11 plan. His supporting declaration stated that "I allegedly have over $2 Million of claims from previous tenants. Although some of the claims contend they are non-

---

[6] Choy paid Sheppard $2,500 on October 20, 2014 from his general DIP account, and paid him an additional $22,500 from that same account on October 22, 2014.

7

dischargeable, debtor feels that a Chapter 7 discharge would be a substantial step towards a new beginning. I would have preferred a reorganization in a chapter 11, and believed settlement with the general unsecured class was almost complete, when in-fact it was far from agreeable terms. [¶]. Although I could potentially keep moving forward with reorganization, the emotions and financial cost of doing so, without the support of the many unsecured creditors, would be too taxing." The motion to convert was unopposed, and this court granted the motion by an order signed on November 10, 2014 and entered on November 12, 2014.

Choy asserted that his transfers and motions were all part of a legal strategy concocted, in part, by Hughes. Hughes testified (via his deposition transcript) that he a) knew that Choy wanted to retain the Santiago Property, b) was aware of the post-nuptial agreement, and c) referred Huang to Kayla Grant for her Chapter 13 case.

Choy also claims that Hughes advised him to reduce the balance of his DIP accounts for exemption purposes if he was going to convert the case to Chapter 7. Choy further testified that it "was his understanding" that the motion to abandon was effective when it was filed, and that it included the Santiago Property cash collateral[7]. Hughes tells a different story. While Hughes certainly discussed with Choy how to salvage the Santiago Property (through a motion to abandon, a transfer to his wife and a Chapter 13 bankruptcy filing), he did not believe that he ever advised Choy to spend cash collateral absent consent or a court order. He also testified that he was unaware that Choy had retained Sheppard and had used cash collateral to pay his retainer. Hughes also did not testify that he informed Choy that the motion to abandon the Santiago Property was effective when it was filed, and that it included the cash collateral.

Choy's transfers and motions were calamitous to the third parties involved. While Sheppard obtained insurance coverage for Choy that ultimately settled the Poe Superior Court action, this court ruled that Choy's motion to abandon did not include the Santiago Property cash collateral. Since Sheppard was not retained by the bankruptcy estate, he was required to disgorge his retainer to the

---

[7] The U.S. Trustee made short shrift of this argument. Choy conceded that numerous motions were filed in his Chapter 11 case, and he never presumed that any of them were effective when filed.

8

**MEMORANDUM AFTER TRIAL**

Chapter 7 trustee (who settled for something less than the entire retainer). Kayla Grant also returned her Chapter 13 retainer to the Chapter 7 trustee. Moreover, the court takes judicial notice that Huang's Chapter 13 case was dismissed on September 18, 2015.

In retrospect, Choy's pre October 2014 inter DIP account transfers may have constituted cause to convert or dismiss this case. These earlier transfers would have been apparent if Choy had filed complete and accurate monthly operating reports. This court takes judicial notice of the U.S. Trustee's monthly operating report instructions in small real estate/individual cases (which may be found on this court's website). Paragraph 11 of these instructions states that "The debtor must attach copies of current bank statements to the monthly operating report each month. In addition, the Debtor must provide copies of check registers and bank reconciliations upon request of the UST." Choy, however, did not attach complete bank account statements to his reports. While Choy's disheveled monthly operating reports may have constituted grounds to convert under Bankruptcy Code § 1112(b)(4)(F), the U.S. Trustee never raised this issue during Choy's Chapter 11. Instead, the U.S. Trustee now asserts that his incomplete monthly operating reports demonstrate that Choy failed to keep or preserve critical information regarding his financial affairs, and that such conduct requires this court to deny him his Chapter 7 discharge.

Choy testified that he did not maintain a general or individual ledgers for his rental properties during his Chapter 11, and that his bank account statements acted as his financial record keeping. Choy also failed to attach complete bank statements to his monthly operating reports. As a result, the U.S. Trustee could not verify the accuracy of his monthly operating reports nor review his DIP account cash flows. Karen Kinney, a certified public accountant employed by the U.S. Trustee, testified regarding the poor quality of Choy's monthly operating reports. She noted that the cash balances that Choy listed on the "Summary of Financial Status" page never corresponded with the actual cash balances in his accounts, and that he never attached complete bank statements, canceled checks or his DP account check registers. This, among other things, prevented the U.S. Trustee from detecting the inter-DIP transfers (see Kinney's testimony regarding Exh. Nos. 14, 15, 17 and 99, and Choy's testimony regarding Exh. P), and verifying the rental income he received during the Chapter 11. Kinney based her testimony on her independent review of Choy's bank records, including his

9

**MEMORANDUM AFTER TRIAL**

bank account statements and checks. This court presumes that the US Trustee obtained these documents through discovery.

## The Claims For Relief

The U.S. Trustee contends that this court should deny Choy's Chapter 7 discharge under Bankruptcy Code § 727(a)(2), (3), (4) and (5). Denial of discharge claims are "to be construed liberally in favor of debtors and strictly against the objector." *In re Devers*, 759 F.2d 751, 754 (9th Cir.1985). In addition, the U.S. Trustee must demonstrate by a preponderance of the evidence "that [the debtor's] discharge should be denied." *In re Retz*, 606 f.3d 1189 (9th Cir. 2010) (citations omitted).

The Section 727(a)(4) Claim For Relief

Bankruptcy Code § 727(a)(4)(A) provides in pertinent part that "The court shall grant the debtor a discharge unless . . . the debtor knowingly and fraudulently, in or in connection with the case –(A) made a false oath or account. . . ." This court may deny a Chapter 7 debtor's discharge if (1) the debtor made a false oath in connection with the case; (2) the oath related to a material fact; (3) this oath was made knowingly; and (4) the oath was made fraudulently. *In re Retz*, 606 F.3d 1189, 1197 (9th Cir. 2010) (*citing Roberts v. Erhard (In re Roberts)*, 331 B.R. 876, 882 (9th Cir. BAP 2005)); *In re Coombs*, 193 B.R. 557, 560 (Bankr. S.D. Cal. 1996) *(citing In re Bodenstein*, 168 B.R. 23, 27 (Bankr. E.D.N.Y.1994)).

A false oath may involve an affirmatively false statement or an omission from a debtor's bankruptcy schedules or statement of financial affairs. *Searles v. Riley (In re Searles)*, 317 B.R. 368, 377 (9th Cir. BAP 2004) (citations omitted), aff'd, 212 Fed.Appx. 589 (9th Cir.2006). A material fact is one that "bears a relationship to the debtor's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of of the debtor's property." *In re Khalil*, 379 B.R. 163, 173 (9th Cir. BAP 2007). Notwithstanding this broad definition, a "false statement or omission that has no impact on the bankruptcy case is not material and does not provide grounds for relief for denial of a discharge under § 727(a)(4). *Id*. at 172. An act is done "knowingly" when the debtor acts "deliberately or consciously." *Id* at 173. Finally, a fraudulent oath or omission is made fraudulently when (1) the debtor makes a misrepresentation or an omission; (2) that at the

10

**MEMORANDUM AFTER TRIAL**

time he or she knew was false; and (3) with the intention and purpose of deceiving creditors. *Id*. Courts typically rely on circumstantial evidence to demonstrate this intent. *In re Devers*, 759 F.2d 751, 753-54 (9th Cir. 1985). Recklessness alone does not establish a debtor's fraudulent intent. It can, however, form a part of the circumstantial evidence typically used to establish fraudulent intent. *Khalil*, 379 B.R. at 173.

The U.S. Trustee argues that Choy's representations, under penalty of perjury, that his original and oft-amended bankruptcy schedules and statement of financial affairs were true and correct constituted false oaths under § 727(a)(4). The U.S. Trustee has demonstrated that Choy's original and most of his amended bankruptcy schedules and statement of financial affairs constituted knowing, false oaths of material facts, such as (but not limited to) the identity of his creditors and the amounts due them. In other words, Choy knew that his original and first few sets of amended bankruptcy schedules and statement of financial affairs were incomplete when they were filed. Yet the evidence also indicates that Choy and Schwartz knew that they needed to substantially amend these bankruptcy documents, and they were forthright with the United States Trustee during Choy's Chapter 11 Initial Debtor's Interview and meeting of creditors regarding the state of his bankruptcy documents. And Choy did, albeit over an exceedingly long period of time, satisfactorily amend his bankruptcy documents[8]. While this court does not condone Choy's attitude towards his schedules and statement of financial affairs, the U.S. Trustee has not demonstrated by a preponderance of the evidence that Choy's filing of incomplete and inaccurate bankruptcy documents was deceitful. While Choy's conduct borders on recklessness, the U.S. Trustee has not persuaded this court that Choy, who testified at length, was attempting to deceive his creditors by not filing full and correct bankruptcy schedules and his statement of financial affairs promptly after filing his Chapter 11 case.

In addition, while Choy's representations on his Schedule I regarding his employment and income give this court some serious pause, the U.S. Trustee failed to sufficiently press this issue.

---

[8] Moreover, Federal Rule of Bankruptcy Procedure 1009(a) states that "A voluntary petition, list, schedule or statement may be amended by the debtor as a matter of course at any time before the case is closed."

11

**MEMORANDUM AFTER TRIAL**

The U.S. Trustee did not present any testimony from Choy's father or any PK Pneuma or Hydrogen Energy officer to contradict Choy's statements that he was gainfully employed. Choy testified that he traveled widely on behalf of his father's companies, and no one testified to the contrary (indeed, Hughes testified that he had difficulty contacting Choy because of his alleged business traveling). Nor did the U.S. Trustee offer Choy's tax returns into evidence, which, if the U.S. Trustee's suspicions were correct, would have shown no employment income during 2013 and 2014.[9]

The Section 727(a)(2)(B) Claim For Relief

Bankruptcy Code § 727(a)(2) provides, in relevant part, that the bankruptcy court must deny a Chapter 7 discharge if "the debtor, with intent to hinder, delay, or defraud a creditor . . . has transferred, removed, destroyed, mutilated, or concealed . . . (B) property of the estate, after the date of the filing of the petition." The party objecting to discharge must demonstrate by a preponderance of the evidence "that [the debtor's] discharge should be denied." *In re Retz*, 606 f.3d 1189 (9th Cir. 2010) (citations omitted). The elements to this claim for relief are that "1. There must be a transfer of property; 2. It involves property of the estate; 3. The transfer occurred after the filing of the petition; 4. The Debtor had, at the time of the transfer, an intend to hinder, delay or defraud a creditor." *In re Ayala*, 107 B.R. 271, 273 (Bankr. E.D.Cal. 1989). The debtor's fraudulent intent must be actual, rather than constructive, and "may be established by circumstantial evidence, or by inferences drawn from a course of conduct." *In re Adeeb*, 787 F.2d 1339, 1342-43 (9th Cir.1986). Further, the statute requires only that the debtor make the transfer with intent to hinder, delay or defraud "a creditor." There is no requirement that the debtor intend to hinder all of his creditors. *In re Schafer*, 294 B.R. 126 (N.D. Cal. 2003).

Choy's payments to Sheppard in October 2014 violated § 727(a)(2)(B) and require this court to deny his Chapter 7 discharge. Choy looted the Santiago Property DIP account to pay Sheppard's retainer. He did so knowing that he could not use this cash collateral without U.S. Bank's or this court's consent, and that U.S. Bank had obtained stay relief to foreclose on its collateral. Sheppard's

---

[9] To the extent that Huang's Chapter 13 Schedule I and Statement of Financial Affairs contradicts her husband's bankruptcy documents, the court notes that Choy did not sign these documents.

12

UNITED STATES BANKRUPTCY COURT
For The Northern District Of California

retention only benefitted Choy, since Choy was desperate to find counsel to negotiate with State Farm in order to limit his potentially non-dischargeable liability to Poe. Thus, the U.S. Trustee has demonstrated that Choy transferred property of the estate with the intent to hinder, delay or defraud U.S. Bank.

Choy's argument that he did not believe this cash to be "property of the estate" is unavailing. Section 727(a)(2)(B) does not require that Choy *intend* to transfer property of the estate. Instead, § 727(a)(2)(B) simply calls for a transfer of property of the estate, and that Choy accomplish this transfer with an intent to hinder, delay or defraud. These are two separate elements, which cannot be intertwined.[10]

The same analysis also applies to Choy's payment to Kayla Grant. Choy funded Grant's retainer and the filing fee from the 10th Avenue DIP account. The funds in that account were Wells Fargo's cash collateral, which held the senior deed of trust against that property[11]. Choy knew that he could not unilaterally transfer these funds, and his doing so deprived Wells Fargo of its cash collateral. Choy's disregard of Wells Fargo's rights demonstrate that he transferred these funds with the intent to hinder and delay Wells Fargo. Choy also transferred these funds with the intent to hinder and delay U.S. Bank. U.S. Bank had relief from the automatic stay to foreclose on the Santiago Property, and Huang's Chapter 13 filing - which was only accomplished through Kayla Grant's retention - enjoined U.S. Bank's collection efforts.

The Section 727(a)(3) Claim For Relief

The U.S. Trustee contends that Choy's failure to maintain sufficient books and records regarding his real estate investments requires that this court deny his discharge under Bankruptcy Code § 727(a)(3). Section 727(a)(3) states in pertinent part that "(a) The court shall grant the debtor a discharge unless - (3) the debtor has . . . failed to keep or preserve any recorded information,

---

[10] As noted above, this court determined when it denied Sheppard's employment application that the Santiago Property cash collateral remained property of the estate after the property itself was abandoned.

[11] Choy listed "Wachovia Mortgage/World Savings and Loan" as the secured creditor in question. This court presumes that Wells Fargo now holds this note and deed of trust.

including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case." The U.S. Trustee has the initial burden of demonstrating that Choy did not maintain and preserve adequate financial records, and that his failure made it impossible to ascertain his financial condition and material business transactions. In re Cox, 41 F.3d 1294, 1297 (9th Cir. 1994).[12] The Ninth Circuit has held that the purpose of § 727(a)(3) "is to make the privilege of discharge dependent on a true presentation of the debtor's financial affairs." In re Cos, 904 F.2d 1399, 1401 (9th Cir. 1990). A debtor's books and records "must reflect, with a fair degree of accuracy, the debtor's financial condition and in a manner appropriate to the debtor's business. Absence of a general ledger is not sufficient reason for denying discharge where there are other books of original entry in evidence that give practically the same information and that are sufficient to disclose debtor's financial condition." 6-727 Collier on Bankruptcy ¶ 727.03 (16th Ed. 2016). As the U.S. Trustee noted, Choy was not required to maintain "an impeccable system of bookkeeping." Meridan Bank v. Alten, 958 F.2d 1226, 1230 (3d Cir. 1992). Instead, this court must examine each case on its own merits, and determine whether the debtor acted reasonably under the circumstances. Ibid. Moreover, § 727(a)(3)'s time frame is limited. Section 727(a)(3) requires this court to determine whether the state of debtor's books and records prevented the U.S. Trustee from ascertaining his financial condition as of the date of the filing of Choy's Chapter 11 bankruptcy or at most, a reasonable before the bankruptcy filing. 'In sum § 727(a)(3) strikes a balance, where the focus is on the kind of record keeping that would allow a bankruptcy court to conduct a fair and expedient distribution of a debtor's assets. As such, the bar on discharge contained in § 727(a)(3) extends to only certain types of record keeping deficits, and only back to a reasonable period past to present." [citation omitted.] Berger & Associates Attorneys, P.C. v. Kran (In re Kran), 493 B.R. 398, 404, 405 (S.D.N.Y. 2013).

The U.S. Trustee primarily contends that Choy's failure to maintain records regarding his

---

[12] The court does not consider the use of the coin operated washers and dryers to be "material business transactions," and this memorandum decision will not address this allegation.

14

a) tenants' security deposits and b) rental income and expenses/transfers requires that this court deny Choy his Chapter 7 discharge. Specifically, the U.S. Trustee argues that the bank records attached to his monthly operating reports did not disclose his multiple inter-DIP account transfers, and that Choy utterly failed to maintain any records of his tenants' security deposits.

While a meticulous landlord probably does maintain a ledger for each investment property, Choy did not. Instead, he relied on his bank statements to manage his rental properties, and he contends that these bank statements accurately reflected the financial condition of each property. If the essence of the U.S. Trustee's § 727(a)(3) claim is that Choy's monthly operating reports prevented it from monitoring his financial condition, her claim fails. Choy's monthly operating reports were admittedly incomplete, since he only attached partial bank statements to them. Had Choy complied with the MOR guidelines, his DIP bank account statements would have disclosed, among other things, that his MOR cash balance statements were incorrect, and he was transferring funds between his DIP accounts. Choy did, however, have bank records. Indeed, these bank statements buttressed the U.S. Trustee's winning § 727(a)(2)(B) argument. Thus, Choy did have adequate financial records with regard to the general operation of his rental properties: his DIP bank account statements[13]. While the U.S. Trustee is understandably frustrated by Choy's failure to comply with her MOR guidelines, this failure alone does not constitute a § 727(a)(3) violation.

Choy's failure to maintain records regarding his security deposits is more troubling. Choy had numerous tenants in his properties, who, accordingly to his Schedule E, gave him $18,485.00 in pre and post-petition security deposits. Choy did not keep any records regarding these transactions. California Civil Code § 1950.5(d) requires that a residential landlord "hold" a tenant's security deposit. When a tenant vacates the premises, a landlord must return the deposit or assert a claim

---

[13] The court notes that Choy's failure to attach his bank statements may have constituted an impermissible "concealment" under § 727(a)(3). The U.S. Trustee did not specifically allege this in her complaint or argue this in her post-trial brief. Nor did the U.S. Trustee argue that Choy's execution of his monthly operating reports constituted a false oath under § 727(a)(4). Choy should have disclosed his October 2014 transfers to Sheppard and Grant in his October 2014 monthly operating report. Again, the U.S. Trustee did not allege this in her complaint or raise this point in her post-trial brief. This court does not condone Choy's preparation of his monthly operating reports.

15

against it as compensation for (among other things) a tenant's rent default or to pay for damages caused by the tenant. See Cal.Civil Code § 1950.5(e). Choy did not explain why he failed to hold the security deposits or maintain any records that would explain how and when he spent them. If Choy had retained the security deposits, he could have used these funds to reduce the substantial claims asserted by his aggrieved tenants. The fact remains, however, that Choy testified that he spent these funds on personal expenses. The court does not question Choy's veracity on this issue. Hughes's testimony underscored Choy's repeated attempts to appease his tenants as part of his attempt to propose a confirmable Chapter 11 plan. If he had the security deposits, the court presumes that he would have added these funds to the pot. He did not, because the funds were not there. The U.S. Trustee has not sufficiently explained why his failure to maintain security deposit records prevented her from ascertaining Choy's financial condition. Choy did not have the security deposits and no one contends that he secreted them. Accordingly, the court finds in Choy's favor on this claim for relief.

The Section 727(a)(5) Claim For Relief

Finally, the U.S. Trustee contends that Choy's inability to account for the security deposits and the transfers/withdrawals from his DIP accounts on the eve of his conversion to Chapter 7 are grounds to deny him his discharge under Bankruptcy Code § 727(a)(5). Section 727(a)(5) provides that a debtor will be denied a discharge when "the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities." Under this code section, the U.S. Trustee must initially demonstrate that "(1) debtor at one time, not too remote from the bankruptcy petition date, owned identifiable assets; (2) on the date the bankruptcy petition was filed or order of relief granted, the debtor no longer owned the assets; and (3) the bankruptcy pleadings or statement of affairs do not reflect an adequate explanation for the disposition of the assets." *Retz v. Samson (In re Retz)*, 606 F.3d 1189, 1205 (9th Cir. 2010). If the U.S. Trustee makes this prima facie case, Choy then must "offer credible evidence regarding the disposition of the missing assets." Ibid.

The U.S. Trustee has not made a prima facie case with regard to most of her § 727(a)(5) allegations. First, Ninth Circuit precedent apparently limits § 727(a)(5) to a debtor's inexplicable,

16

*pre-petition* loss of assets. See In re Retz, supra. In contrast to § 727(a)(2) - which specifically refers to conduct regarding "property of the debtor" and "property of the estate" - § 727(a)(5) focuses on a loss or deficiency of a debtor's "assets." While this term is seemingly broader than the scope of property addressed in §727(a)(2), § 727(a)(5) also refers only to the debtor and not to the trustee or the bankruptcy estate. Accordingly, this court reads In re Retz to apply only to a debtor's pre-petition conduct.[14] Even if § 727(a)(5) is applicable to post-petition conduct, the evidence satisfactorily demonstrated what Choy did with the various inter-DIP account transfers (used to retain lawyers to settle the Poe litigation and retain the Santiago Property) and the one small security deposit that he received post-petition (he spent it on personal expenses).

This reduces the U.S. Trustee's § 727(a)(5) claim to Choy's expenditure of $18,485.00 in pre-petition security deposits (see Exh. 4, Schedule E). The U.S. Trustee's argument regarding these funds also fails. First, the court does not know exactly when Choy received and disposed of these funds. Choy's amended Schedule E does not state when he received these deposits, and the U.S. Trustee did not introduce any supplemental evidence to establish these dates (which would have addressed whether their receipt was too remote to fall within § 727(a)(5)). Second, Choy explained that he used these relatively small, individual security deposits to pay for his personal expenses. Given that Choy apparently received these deposits at different times (since they were paid by numerous tenants), and his questionable employment history, this is, at least in this case, a satisfactory explanation of his disposition of these funds.

## Conclusion

For the reasons stated above, this court denies Choy his Chapter 7 discharge. The U.S. Trustee shall prepare an appropriate judgment.

**\* \* \* END OF ORDER \* \* \***

---

[14] This court located two cases which applied § 727(a)(5) to a debtor's post-petition disposition of assets. These cases are outside of the Ninth Circuit and they do not address the issue raised above. See In re Darr, 472 B.R. 888 (Bankr. E.D. Mo. 2012); In re Glenn, 335 B.R. 703 (Bankr. W.D. Mo. 2005). Moreover, while Choy did convert his Chapter 11 to Chapter 7, the U.S. Trustee does not argue that the conversion brings the disposition of this property into § 727(a)(5)'s time frame. See Bankruptcy Code § 348(a) and (b).

**COURT SERVICE LIST**

Recipients are ECF participants